UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| MARK YOUNG, | ) | CASE NO. 4:07 CV 3598 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J. T. SHARTLE, | ) | |
| | ) | |
| Respondent. | ) | |

Pro se petitioner Mark Young filed the above-captioned petition on November 20, 2007 pursuant to 28 U.S.C. § 2241. Mr. Young, who is confined at the Federal Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"), brings this action against J. T. Shartle, Warden at F.C.I. Elkton, asserting that the respondent is improperly executing his sentence.

*Background*

In September 1999, Mr. Young pleaded guilty to "fraud related activity" in violation of federal law.[1] He was sentenced to an unspecified term of imprisonment, followed by three years

---

[1]Based on the facts alleged in the complaint, the court believes that the offense for which
(continued...)

of supervised release. On July 9, 2004, the authorities released him from prison and he began serving his supervised release term.

On or about March 27, 2006, Mr. Young was arrested by Baltimore, Maryland authorities for "theft related" charges. Shortly thereafter, the United States Marshal Service lodged a detainer with the Maryland authorities on April 4, 2006 indicating that petitioner may have violated a term of his supervised release. Thereafter, petitioner entered a guilty plea in state court in May 2006 and was sentenced to a "10 year term all suspended but 5." (Pet. at 3.) He appealed that sentence.

The sequence of events following Mr. Young's sentencing in state court are not entirely clear. He claims that

> [o]n November 21, 2006 the appeal of the May disposition was heard in the Circuit Court. On a plea of 'not guilty, statement of facts' this petitioner was sentenced to a 1 year term. The court ordered the sentence to run concurrently to any unserved or outstanding sentence to which this Petitioner may be obligated. The Court credited 239 days for time served to and not including the date of sentence.

(Pet. at 4.) It is not at all clear to what "Court" Mr. Young is attributing the imposition of the one year term of imprisonment. He claims that on November 28, 2006 he appeared before a United States Magistrate "on the subject of the supervised release mittimus." (Pet. at 4.) Without any further details, Mr. Young then maintains that he requested an amendment of his "custody . . . to account for the period of March 27, 2006 thru November 28, 2006. This result would chronologically conform the existing custody committment [sic], in toto, to the period of the revocation committment

---

[1](...continued)
a supervised release term was imposed was a federal offense.

2

[sic], i.e., 'a total of 24 months.'" (Pet. at 4.)

*Analysis*

Mr. Young refutes the Bureau of Prisons' (BOP) decision to deny the relief he has allegedly requested. He challenges both the BOP's interpretation of 18 U.S.C. § 3585, as well as its "interpretation of supervised release law." It is his contention that if the BOP were reasonable it would interpret supervised release law with "the committment [sic] order adjusting supervised release would promote a contrary decision to the one reached by the BOP." (Pet. at 4.) He notes that this court has the authority pursuant to 5 U.S.C. § 706 to set aside the BOP's "decision" as, inter alia, arbitrary, capricious or as an abuse of discretion.

The BOP allegedly denied Mr. Young's requested relief because he was already awarded sentencing credit he is seeking against another sentence; and, the completed service of his state sentence prior to the imposition of his federal sentence. In his defense, Mr. Young argues there are circumstances wherein a prisoner is entitled to "double credit." To that end, he cites Rios v. Wiley, 201 F.3d 257, n. 13 (3rd Cir. 2000) and Buggs v. Crabtree, 32 F. Supp. 2d 1215 (D. Or. 1998) in support of his claim that exceptions to the statute exist. With regard to the timing of his request, Mr. Young argues that while his state term of imprisonment ended before his federal term was imposed he was still under the post release control of the state. It is his position that his state parole and federal sentences reflect two "sentences" that are running concurrently, as the court desired. He reasons that the state probation period places him in the custody of the state, while he is concurrently in federal custody serving out his federal term of imprisonment.

*28 U.S.C. §2241*

Prisoners seeking to challenge the execution or manner in which their sentence is

3

served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir. 1977). As a prisoner incarcerated at F.C.I. Elkton, Mr. Young's custodian is within this court's personal jurisdiction. Whether this court can grant the relief he seeks under 28 U.S.C. § 2241, however, will be addressed below.

### *Sentencing Credit*

After a district court sentences a federal offender, the BOP has the responsibility for administering the sentence. See 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed"). To fulfill this duty, the BOP must know how much of the sentence the offender has left to serve. In some cases, offenders may exercise their right to certain jail-time credit under 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b)(emphasis added). Because the district court cannot determine the amount of the credit at sentencing, the BOP makes the determination as an administrative matter when imprisoning the defendant. United States v. Wilson, 503 U.S. 329, 335 (1992).

Here, Mr. Young admits that he has already received sentencing credit on his state

4

sentence for the period of time in which he is seeking credit on his federal sentence. It is his belief that it is within the discretion of the BOP to award prisoners double credit under certain circumstances and he feels he qualifies for the benefit of that discretion. He claims that the Third Circuit in Rios and the Buggs case in the United States District Court of Oregon have recognized that an exception exists wherein a prisoner may receive credit on his state and federal sentences for the same time period. This is, however, a misreading of Rios, and the issue in Buggs was one of primary jurisdiction, which is not an apparent conflict in this matter.

The Rios decision was primarily concerned with section 5G1.3(c) of the sentencing guideline, wherein a federal sentence should be imposed to run consecutively to a prior undischarged term of imprisonment to the extent necessary to achieve reasonable incremental punishment for a crime. It was the appeals court's consideration of the district court's reliance on § 5G1.3 that called into question whether the BOP was in compliance with the court's intent to reduce the prisoner's federal sentence by providing "reasonable incremental punishment." Rios, 201 F.3d at 265-67. With regard to the statute upon which Mr. Young is relying, however, the court was unyielding in its determination that §3585 does not permit double credit:

> The courts have construed the last clause of section 3585(b) as limiting an award of credit for time served prior to the imposition of a federal sentence under section 3585(b) to instances where the time period was not spent in service of a previously imposed sentence and thus had not been credited against that earlier sentence. . . . We agree with this body of case law interpreting the plain language of section 3585(b), and find that in the circumstances presented here, the section does not authorize the award of credit for the 22 months that Rios spent in federal control under the second writ.

Id. at 272.

The exception to which Mr. Young refers to in <u>Buggs</u> is similarly unavailing. "[T]he parties contended, and the court agreed, that the issue in [Buggs] . . . is one of primary jurisdiction."[2] at 1218. There, all parties were clearly in agreement that the state sentences imposed three and four months, respectively, after the federal court sentencing and remand order were to run concurrently to the federal sentence already being served by Mr. Buggs. Moreover, the state prosecuting attorneys and the judges believed that the federal sentence imposed in March 1994 was, at that time, already being served by Mr. Buggs.

Here, Mr. Young was arrested on March 27, 2006 by Maryland state authorities. It appears that a detainer violator warrant may have been issued by federal authorities on April 4, 2007, but there is no indication that petitioner's presence was requested in federal court by writ. He then pleaded guilty to the charges leveled against him by the state of Maryland, which sentenced him to 10 years imprisonment on May 2, 2006. While Mr. Young makes the innocuous statement that he "appeared before a U.S. Magistrate on the subject of the supervised release mittimus," this is no indication that he was sentenced, found in violation of supervised release, or returned to the custody of the state. Based on the scant facts alleged, the court is deprived of any context within which to address whether or when a federal sentence was imposed, whether the court intended for the sentence to run concurrently to the state sentence or whether the federal court executed a detainer warrant against Mr. Young. As of matter of law, the facts instruct that Mr. Young was in state custody until

---

[2]The petitioner contended, and the court agreed that although the state of Washington was the first sovereign to arrest him, the state relinquished any power conferred by his arrest when it failed to act on the charge for which he was arrested and failed to bring him into court in the other state case commenced after his arrest. The record showed that the state of Washington recognized such relinquishment by statements of the judges and the prosecuting attorneys, in each of the two state cases which were pending.

6

and unless the state relinquished jurisdiction. See Ponzi v. Fessenden, 258 U.S. 254, 260 (1922).[3] Mr. Young has not disclosed enough relevant facts for this court to determine what term of a federal sentence he is seeking to challenge. Moreover, although he claims he exhausted his administrative remedies, Mr. Young does not state or provide a copy of a statement which sets forth the basis upon which the BOP allegedly denied his requested relief.

Based on the foregoing, this petition is **dismissed** without prejudice pursuant 28 U.S.C.§ 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED

*Christopher A. Boyko*
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT COURT

FILED
JAN 24 2008
CLERK OF COURTS
U.S. DISTRICT COURT, N.D.O.
CLEVELAND

---

[3]The Supreme Court in Ponzi held that:

> The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose....

258 U.S., at 260.